IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DR. PAMELA SCOTT BRACEY                                                                    PLAINTIFF

V.                                                               CIVIL ACTION NO. 1:19-cv-233-NBB-DAS

MISSISSIPPI STATE UNIVERSITY                                                            DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court upon the defendant Mississippi State University's Motion for Summary Judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

### Factual Background and Procedural Posture

The plaintiff, Dr. Pamela Scott Bracey, is an African-American female who began her employment with the defendant, Mississippi State University ("MSU"), in August 2013, where she is currently a tenured Associate Professor in the College of Education's Department of Instructional Systems and Workforce Development ("ISWD"). In the instant lawsuit, filed on December 19, 2019, Bracey complains of race discrimination, including disparate pay based on race, hostile work environment based on race, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

Bracey alleges that she had no issues at MSU during the first four years of her employment as an Assistant Professor in the ISWD department, receiving numerous awards and grants and satisfactory performance reviews. She asserts that in 2017 her work environment changed for the worse when Dr. Trey Martindale became her department chair. She alleges that under Martindale's leadership she was repeatedly slighted, disrespected, and embarrassed in ways that her non-African-American coworkers were not. For instance, Bracey contends that at

the beginning of Martindale's leadership she was asked to write an essay explaining her relevance to the ISWD, and other non-African-American professors were not required to do so. She takes issue with the fact that MSU failed to acknowledge and publicize her winning of a regional teaching award and further asserts that she had repeated problems with her class schedule, including the lost opportunity to teach summer courses as a source of additional income. Additionally, Bracey lists a lengthy number of perceived slights such as having her research closet accessed without her permission, exclusion from discussions concerning projects in which she was allegedly involved, depriving her of potential career opportunities, obstruction of her application for tenure and promotion through Martindale's changing requirements for applications, students being allowed access to her office without her permission or prior knowledge, interpersonal disrespect from office staff, and exclusion from department advertisements and displays which allegedly diminished her contributions to the ISWD and the profession.

On August 31, 2018, Bracey filed a Charge of Discrimination with the EEOC, specifically naming Martindale as the cause of her problems with racial discrimination and harassment. She alleges that subsequent to her EEOC charge, she received a lower merit pay raise than three non-African-American colleagues.

Despite her alleged problems with Martindale, Bracey was awarded tenure and a promotion to Associate Professor effective August 16, 2019, under Martindale's leadership. She has been employed by MSU through a series of nine-month employment contracts which provide her with employment beginning in August and ending in May of the following year. Her contracts have never included a right to summer employment, and no such employment has ever been guaranteed to her.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

*Timeliness*

As an initial matter, the court addresses the defendant's argument that certain claims of Bracey are barred by the statute of limitations. A person desiring to bring a Title VII lawsuit must first file a charge of discrimination within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The time for filing a charge with the EEOC

begins to run when the alleged discriminatory act occurs. Bracey filed her EEOC charge against MSU on August 31, 2018. According to MSU, her Title VII claim for race discrimination is therefore barred by the statute of limitations to the extent it relies on alleged acts occurring prior to March 5, 2018.

The Supreme Court has held, however, that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Amtrak v. Morgan*, 536 U.S. 101, 105 (2002). The defendant acknowledges this distinction as to Bracey's hostile work environment claim, agrees that the alleged insufficient pay raise claim is timely, and clarifies that its initial timeliness argument related only to additional allegations of race discrimination asserted in Bracey's complaint, unrelated to matters of pay, that she now appears to have abandoned. Bracey's remaining race discrimination claim specific to pay, which she asserts separately and as part of her hostile work environment and retaliation claims, is timely. In the event Bracey did not intend to abandon her race discrimination claims based on matters other than pay and hostile work environment for the period prior to March 5, 2018, those claims would be time-barred.

*Race Discrimination Based on Pay*

To succeed on her discriminatory pay disparity claim, Bracey must first establish a prima facie case by showing (1) that she was a member of a protected class and (2) that she was paid less than a non-member of her protected class for work requiring substantially the same responsibilities. *Taylor v. United Parcel Serv., Inc.*, 554 F. 3d 510, 522 (5th Cir. 2008). To satisfy the second element, Bracey must show that her "circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class." *Id.* at 523.

In advancing her race discrimination claim as to pay, Bracey asserts that a merit-based pay raise she received in 2019 was too low and that she received a lower base salary than another MSU employee following her promotion to Associate Professor. Bracey offers as comparators ISWD Associate Professors Dr. Sang Joon Lee, Dr. Joanne Beriswill, and Dr. John Wyatt. It is uncontested, however, that Wyatt and Beriswill had seniority over Bracey, while Lee, though hired and later granted tenure and promoted at the same time as Bracey, held additional responsibilities as Program Coordinator for the Master of Science in Instructional Technology. Lee and Bracey received the same pay raise, $7500.00, in connection with their grant of tenure and promotion, but Lee actually received a merit pay raise at a lower percentage than Bracey. Prior to the tenure and promotion and merit raise, however, Lee received a competing job offer that resulted in his successfully negotiating a higher salary. Ultimately, therefore, Lee's salary during the contract period at issue, 2019-2020, was higher than Bracey's, but MSU has proffered legitimate, non-discriminatory reasons for the difference. Neither of the circumstances which applied to Lee applied to Bracey. She did not have the additional responsibilities of a program coordinator; nor did she receive a competing job offer to drive up her salary, as Lee did. She cannot show that she was paid less or received a lesser raise than a non-member of her protected class for work requiring substantially the same responsibilities under nearly identical circumstances as her comparator professors. She is therefore unable to establish a prima facie case of race discrimination regarding pay, and even if she could, MSU has, as mentioned, presented legitimate, non-discriminatory reasons for the distinction and its actions. For her claim to survive summary judgment, under the familiar *McDonnell Douglas* burden-shifting framework,[1] Bracey is required to rebut each of MSU's proffered reasons by showing that each

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

reason is pretextual. *Minnis v. Bd. of Supervisors of La. State Univ.*, 620 F. App'x 215, 219 (5th Cir. 2015). A proffered reason for the action is pretextual when the "proffered explanation is false or unworthy of credence." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). The court finds that Bracey has failed to meet her burden in this regard, and accordingly, her claim for race discrimination based on pay must fail.

*Hostile Work Environment*

To establish a hostile work environment claim, Bracey must show that (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *Id.* (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). That is, not only must the plaintiff perceive the conduct as hostile, the conduct "must also be such that a reasonable person would find it to be hostile or abusive." *Id.* In determining whether an environment was objectively offensive, the court considers the totality of the circumstances. *Id.* Among the factors the court should consider are "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

In attempting to set forth her hostile work environment claim, Bracey asserts accusations which, as MSU notes, "amount to nothing more than unpleasant work interactions, inconveniences, or perceived unfair treatment that cannot constitute actionable adverse

6

employment actions in the context of Title VII discrimination allegations." [Docket 54, p. 11] Among these allegations are Bracey's contentions that MSU made it more difficult for her to earn tenure and promotion, required her to prove her relevance to the department in an essay, instituted requirements in her daily work that she alleges were not instituted against similarly-situated co-workers outside her protected class, caused a delay in Bracey's receiving her pay on one occasion, and failed to include her classes on a master class schedule during MSU's advisement period.

MSU has offered explanations for each of these assertions. First, the only change made regarding MSU's tenure and promotion process was that *all* applicants were asked to provide their tenure application documents in an electronic format for external reviewers. No substantive requirements were changed, and no changes were made to the tenure and promotion guidelines. MSU asserts that the request was made to make review of the applicants' submissions easier for the external reviewers, not for any discriminatory purpose, as is clear from the fact that the request applied to all applicants. Indeed, Martindale himself explicitly offered to scan documents for the applicants, including Bracey, should the process for converting documents to a digital format be too time-consuming to complete. Significantly, Bracey does not allege that she was unable to submit sufficient documentation to external reviewers or that she was actually prejudiced beyond mere inconvenience by any changes in the procedure. As noted, Bracey ultimately received tenure and promotion under Martindale's leadership.

Second, Bracey's claim that she was required to prove her relevance to the department by writing a "relevance essay" is similarly inconsequential. Prior to Martindale's arrival as department head, Bracey's primary function in ISWD was in regard to a program she helped develop known as the "BTE" program. Due to low enrollment, the BTE program was suspended

7

in March 2017, prior to Martindale's arrival, and thereafter discontinued, also prior to Martindale's arrival. Bracey was the lead faculty member in the now-eliminated BTE program and the only ISWD faculty member who worked primarily within that program of study. Upon his arrival, Martindale therefore asked Bracey to provide a document explaining what she wanted to do in the department following the elimination of the program. His effort to determine Bracey's future role within the department resulted in no adverse employment action against Bracey. Indeed, Bracey fared much better than a co-worker outside her protected class who faced a similar situation. A white faculty member in MSU's College of Education was terminated when her program was discontinued near the same time that Bracey's program was discontinued, while Bracey retained her employment.

Bracey also contends that some of her courses did not appear initially on a master class schedule and that she struggled to find students to enroll once her classes were added. Bracey's pay during the fall and spring semesters is based on a fixed contractual amount; therefore, the only income that could have been affected by courses Bracey taught or did not teach would be supplemental summer income to which no faculty member at MSU is entitled. Because no faculty member is entitled to teach any course during the summer and has no ownership over courses, no instance in which Bracey alleges requested courses were left off the schedule could constitute an adverse employment action.

Bracey also complains of a delay in receiving a paycheck in July 2018. It is undisputed, however, that she ultimately received the pay she was due and therefore cannot show an adverse employment action as a result of the short delay in her pay processing, which was due to various administrative issues in processing forms necessary to pay Bracey from the grant that was partially funding her summer employment. Other faculty paid by the same grant also

experienced issues with their pay, and Bracey has failed to direct the court to any evidence of discriminatory intent as a cause for the delay.

Additionally, Bracey cites a lengthy list of perceived insults and slights, including Martindale's request that she stop by his office and see him whenever she happened to be in the building,[2] alleged disrespect from office staff, alleged exclusion from committees and events, and other allegations. The court finds that none of these remaining allegations amount to harassment affecting a "term, condition, or privilege of employment"; nor are the allegations "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). Further, even if Bracey could provide evidence of any conduct that was objectively offensive or affected a term, condition, or privilege of her employment, she is unable to show that any alleged harassment was based upon her race. The court therefore finds that Bracey's hostile work environment claim is without merit and should be dismissed.

*Retaliation*

To establish a prima facie case of retaliation, Bracey must show that (1) she engaged in a protected activity; (2) MSU took a materially adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *Steward v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). An action is materially adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).

---

[2] Bracey worked remotely a majority of the time, thus any request to stop by Martindale's office when she was on campus was neither unreasonable or discriminatory. Further, Bracey does not allege that failure to comply resulted in any adverse action against her.

Bracey limits her retaliation argument to the alleged insufficiency of the raise she received in 2019, asserting that MSU engaged in a materially adverse employment action by denying her the pay increase she would have received if she had not engaged in protected activity, i.e., filing her EEOC charge. It is uncontested, however, that MSU awarded Bracey a raise that fell within the recommended standard percentage of MSU faculty raises. In fact, Bracey's 2019 raise was based on a higher percentage than Dr. Sang Joon Lee, a non-African-American colleague and fellow Associate Professor to whom Bracey seeks to compare herself.

Moreover, Bracey has not established the requisite causal connection between her protected activity and allegedly insufficient raise. Bracey acknowledges that more than eight months passed between the filing of her EEOC charge and the issuance of her 2019 pay raise. The Fifth Circuit has previously declined to find that temporal proximity between the protected activity and the alleged adverse employment action established a causal connection where the time lapse was just over two months. *See Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012). The court "observed that timing alone 'will not always be enough for a prima facie case.'" *Id.* (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). The court noted that "[w]hile this time period is short, it is not, by itself, enough to show a causal connection based upon temporal proximity alone." *Id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (requiring "very close" proximity)).

Finally, for a Title VII retaliation claim, Bracey has the burden of proof to "establish that the employer's stated reason is actually a pretext for unlawful retaliation," *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013), which the plaintiff "accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Univ. of Tex. Southwestern Med.*

*Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Here, Bracey has not presented any evidence to prove that she would have received a higher raise in 2019 but for the alleged retaliatory animus against her. The court finds that Bracey's claim for retaliation is without merit and must be dismissed.

Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion will issue this day.

This 1st day of September, 2021.

      /s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE